UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LOUISE M. MCCARTHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 09-10161-PBS |
| THE COMMERCE GROUP, INC. | ) | |
| and MAPFRE, S.A., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS
## FOR SUMMARY JUDGMENT RELATING TO MAPFRE, S.A.

June 9, 2011

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Louise M. McCarthy ("Ms. McCarthy"), was formerly the Senior

Vice President, Senior Counsel and Assistant Secretary of defendant, The Commerce

Group, Inc. ("CGI").  On June 4, 2008, CGI merged with defendant Mapfre, S.A.

("Mapfre"), and was transformed from a stand-alone, publicly traded domestic entity into

a private, wholly-owned subsidiary of a foreign corporation.[1]  On June 5, 2008, one day

after the merger, Ms. McCarthy submitted a Notice of Intent to Resign for Good Reason

to CGI in which she informed the company that she intended to resign from her position

for "Good Reason" pursuant to the terms of an Employment Agreement dated September

---

[1]  On January 1, 2010 CGI changed its name to MAPFRE USA Corp.  However, this
court will continue to refer to that entity as CGI to avoid confusion with the parent corporation,
MAPFRE, S.A.

7, 2007 (the "Employment Agreement") and two Incentive Award Agreements ("Incentive Agreements"). In this action, Ms. McCarthy claims that CGI and Mapfre breached their contractual obligations under the Employment and Incentive Agreements, and failed to act in good faith, by denying her good reason claim and refusing to pay her approximately $4.5 million in severance pay and benefits under the Agreements.

All parties have filed motions for summary judgment. This Report and Recommendation will address Ms. McCarthy's and Mapfre's cross-motions for summary judgment with respect to the plaintiff's claims against Mapfre (Docket Nos. 55 and 59).[2] Mapfre contends that it is entitled to summary judgment on all counts of the complaint because Counts I (breach of employment agreement), II (declaratory judgment re employment and incentive agreements), III (breach of duty of good faith and fair dealing) and V (recovery of benefits under ERISA) are dependent upon a contractual relationship between Mapfre and Ms. McCarthy, which does not exist, and because Ms. McCarthy has failed to establish that Mapfre is liable for unlawful interference with contractual relations, as alleged in Count IV of the complaint. As detailed herein, this court concludes that Mapfre is entitled to summary judgment with respect to Counts I-III and V of Ms. McCarthy's complaint, but that disputed issues of fact preclude summary

---

[2] These cross-motions, and this court's analysis thereof, are premised upon the assumption that the Employment and Incentive Agreements at issue, and the state law claims arising therefrom, are not preempted by ERISA. Therefore, the issue of ERISA preemption will be addressed in connection with CGI's motion for summary judgment and will not be addressed herein.

judgment for either party with respect to Count IV.  Therefore, and for all the reasons set forth below, this court recommends to the District Judge to whom this case is assigned that Mapfre's Motion for Summary Judgment (Docket No. 59) be ALLOWED IN PART and DENIED IN PART, and that Ms. McCarthy's Motion for Summary Judgment (Docket No. 55) be DENIED with respect to all of the claims against Mapfre.

## II.  STATEMENT OF FACTS

The following facts relevant to Ms. McCarthy's claims against Mapfre are undisputed unless otherwise indicated.  This decision further assumes the reader's familiarity with this Court's Report and Recommendation with respect to the claims against CGI, and the facts described therein.

Ms. McCarthy, an attorney, was Senior Counsel of CGI from the time when she was hired in September 2001, until she resigned on July 7, 2008.  In addition, in August 2006 she was promoted to the position of General Counsel to CGI's insurance subsidiaries, and became Senior Vice President and Assistant Secretary of CGI.  Throughout her employment, Ms. McCarthy reported to James Ermilio.  Mr. Ermilio was the General Counsel of CGI during Ms. McCarthy's entire tenure, and in 2006, he also gained the title of Executive Vice President of CGI.

At about the time CGI began merger negotiations with Mapfre, CGI's Board of Directors authorized the Company to enter into Employment Agreements with eleven of its key Executive Officers.  Ms. McCarthy entered into an Employment Agreement, dated

as of September 7, 2007 ("EA"),[3] which provided for a significant severance payment, as well as life and health insurance benefits, in the event Ms. McCarthy resigned from employment for "Good Reason." (EA §§ 3(e)-(f)). "Good Reason" is defined in relevant part as:

> (i) a substantial and adverse alteration in the nature, status, or prestige of the Executive's responsibilities, title, authority, powers, functions, duties or reporting requirements, taken as a whole[.]

(EA § 8).[4] Pursuant to the Agreement, Ms. McCarthy was entitled to a more generous severance payment, and more extensive benefits, if her resignation for "Good Reason" occurred within three years following a "Change of Control," including in the event of a merger. (See EA §§ 3(f) & 8).

The Employment Agreement further provided in relevant part that

> the Company shall require its successor (whether direct or indirect, by purchase, merger, consolidation, or otherwise) to all or substantially all of its business and/or assets to expressly assume and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform it if no such succession had taken place.

---

[3] A copy of the Employment Agreement is attached to the Transmittal Affidavit of Roberto Tepichin ("Mapfre Ex.") (Docket No. 62) as Ex. 1.

[4] Other "Good Reasons" set forth in the Employment Agreement include reductions in compensation and benefits, reductions in facilities and perquisites, the Company's relocation, or breach by the Company of material obligations owed to the Executive. (EA § 8 at "Good Reason" definition ¶¶ (ii)-(vii)). These provisions are not presently at issue.

(EA §15(c)).  Moreover, any "[f]ailure by the Company to obtain such assumption and agreement prior to the effectiveness of any such succession" also was deemed to constitute "Good Reason" for the Executive to resign.  (Id.).

The Employment Agreement recognizes that determinations as to Good Reason under that Agreement apply to a determination of Good Reason under the Incentive Agreements ("IA"), which governed Ms. McCarthy's bonus compensation, and vice versa.  ("EA § 3(m)).  Accordingly, the 2006 and 2007 Incentive Agreements between Ms. McCarthy and CGI,[5] which are at issue in this litigation, provide that following a "Change in Control" of the Company, the Officer had "Good Reason" to resign if there was

> a substantial and adverse alteration in the nature, status, or prestige of the Officer's responsibilities, title, authority, powers, functions, duties or reporting requirements, taken as a whole....

(IA § 5.4.3(i)).  Under the Incentive Agreements, the Officer's situation was to be "compared to the Officer's responsibilities, title, authority, powers, functions, duties or reporting requirements, taken as a whole, immediately prior to the Change in Control." (Id.).  Pursuant to the Employment Agreement, "the determination of Good Reason [was to] be made, at the Executive's election relative to conditions existing immediately prior to the commencement of [an agreement resulting in a Change in Control]."  (EA § 3(c)(iii)).

---

[5]  Copies of the Incentive Agreements can be found at Exhibits 1C and 1D to the Exhibits in Support of Plaintiff's Motion for Summary Judgment ("Pl. Ex.") (Docket No 58).

The principle issue in dispute in this litigation is whether McCarthy had "Good Reason" to resign following the merger with Mapfre. Whether summary judgment should be awarded on that issue shall be addressed in the cross-motions of CGI and Ms. McCarthy for summary judgment. The key issues raised with respect to Mapfre are whether Mapfre is a party to or assumed any obligations under the Employment Agreement and the Incentive Agreements, and if not, whether Mapfre unlawfully interfered with a contractual relationship between CGI and Ms. McCarthy. As detailed below, this court finds that the clear and unambiguous language of the Employment and Incentive Agreements mandates the conclusion that Mapre cannot be held liable for any of CGI's contractual obligations to Ms. McCarthy thereunder. However, the record reveals disputed issues of material fact that preclude summary judgment for either party on the plaintiff's interference claim.

## III. ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment is appropriate when the moving party shows, based on the discovery, affidavits and other materials on file, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the

applicable law." Id. (quotations and citations omitted).  In order to defeat the entry of

summary judgment, the nonmoving party must submit "sufficient evidence supporting the

claimed factual dispute to require a choice between the parties' differing versions of the

truth at trial." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (internal

citations and quotations omitted), cert. denied, 511 U.S. 1018, 114 S. Ct. 1398, 128 L.

Ed. 2d 72 (1994).  However, the court will not consider "conclusory allegations,

improbable inferences, and unsupported speculation." Galloza v. Foy, 389 F.3d 26, 28

(1st Cir. 2004) (quotations and citation omitted).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but

rather simply require [the court] to determine whether either of the parties deserves

judgment as a matter of law on facts that are not disputed." Adria Int'l Group, Inc. v.

Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).  "When facing cross-motions for

summary judgment, a court must rule on each motion independently, deciding in each

instance whether the moving party has met its burden under Rule 56." Dan Barclay, Inc.

v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991).

### B.    Contract-Based Claims Against Mapfre

Mapfre argues that Ms. McCarthy's failure to prove the existence of a contractual

relationship between the parties warrants summary judgment in the defendant's favor on

Counts I, II, III and V of her complaint.  This court agrees that the plaintiff's ability to

show that Mapfre was bound by the terms of the Employment Agreement and/or the

Incentive Agreements is a prerequisite to recovery on those claims, and that her failure to make the necessary showing entitles Mapfre to summary judgment on those claims.

In order to hold Mapfre liable on her claim for breach of contract, Ms. McCarthy must "show that an express or implied binding agreement existed between her and the defendant[]." Orell v. UMass Mem'l Med. Ctr., 203 F. Supp. 2d 52, 67 (D. Mass. 2002). Similarly, "a claim for breach of the covenant of good faith and fair dealing exists only where there is an enforceable contract between the parties[.]" Id. at 68. As detailed below, Mapfre has shown that no such relationship existed. Therefore, Mapfre is entitled to judgment as a matter of law on Counts I and III of the Complaint.

The plaintiff's claims against Mapfre for a declaratory judgment (Count II) and for benefits under ERISA (Count V) are likewise premised upon the existence of an agreement between the parties. (See Compl. ¶¶ 73, 75 (seeking judicial declaration that defendants must pay severance and other payments under the Employment Agreement, and that plaintiff has a right to receive payments under the Incentive Agreements); Compl. ¶ 88 (seeking recovery of benefits due under Employment Agreement and/or Incentive Award Agreements)). Thus, Ms. McCarthy's failure to establish a contractual relationship between herself and Mapfre precludes her ability to prevail on those claims as well. See Finne v. Paul Revere Life Ins. Co., 981 F. Supp. 57, 59 (D. Mass. 1997) (finding that any recovery under ERISA was dependent upon existence of a contract and defendant's failure to satisfy obligations thereunder); Sahli v. Bull HN Info. Sys., Inc., 437 Mass. 696, 705-07, 774 N.E.2d 1085, 1093-94 (2002) (declaratory judgment claim

based on release and severance agreement was appropriate since a valid agreement existed between the parties and provided a legitimate basis for relief).

## Principles of Contract Interpretation

In determining whether a contractual relationship exists between the parties, this court is guided by well-established principles of contract interpretation. "Under Massachusetts law, interpretation of a contract is ordinarily a question of law for the court." Fairfield 274-278 Clarendon Trust v. Dwek, 970 F.2d 990, 993 (1st Cir. 1992) (quotations and citations omitted). "In interpreting contracts, 'words that are plain and free from ambiguity must be construed in their usual and ordinary sense.'" Cady v. Marcella, 49 Mass. App. Ct. 334, 338, 729 N.E.2d 1125, 1129 (2000) (quoting Ober v. Nat'l Cas. Co., 318 Mass. 27, 30, 60 N.E.2d 90, 91(1945)). Moreover, "[t]he contract must be construed 'as a whole, in a reasonable and practical way, consistent with its language, background and purpose.'" Id. at 338, 729 N.E.2d at 1129-30 (quoting USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass. App. Ct. 108, 116, 546 N.E.2d 888, 893 (1989)). Accordingly, the court must "give reasonable effect to each of its provisions. Every phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties." Sarvis v. Cooper, 40 Mass. App. Ct. 471, 475-76, 665 N.E.2d 119, 122 (1996) (internal quotations, citation and alterations omitted). When these principles are applied to the Employment

and Incentive Agreements at issue in the instant case, they compel the conclusion that Mapfre assumed no contractual obligations to Ms. McCarthy, and that it cannot be held liable for any failure to award severance and other benefits allegedly owed to the plaintiff under those Agreements.

## Parties to the Employment Agreement

The plain language of the Employment Agreement shows that it was made "by and between" McCarthy, as the "Executive" "and The Commerce Group, Inc., a Massachusetts corporation (the 'Company'), on behalf of itself and each of the Companies, as hereinafter defined." (Preamble). Under the Agreement, the "Company" was obligated to make certain payments and, under certain circumstances, provide certain benefits to the Executive upon the Executive's separation from employment. (EA §§ 3(e)-(h)). Section 8 defines "Companies" as "the Company and its successors or any of its direct or indirect parents or direct or indirect subsidiaries, now or hereafter existing." It defines "Company" as "The Commerce Group, Inc., a Massachusetts corporation, and any successor."

Ms. McCarthy contends that Mapfre is a "successor" under the Employment Agreement, and therefore assumed or is otherwise responsible for carrying out the obligations of the "Company" under the Agreement. This court disagrees. On October 30, 2007, "MAPFRE S.A., a company organized under the laws of Spain ("Parent"), Magellan Acquisition Corp., a Massachusetts corporation and an indirect wholly-owned subsidiary of Parent ("Subsidiary"), and The Commerce Group, Inc., a Massachusetts

corporation (the "Company")" entered into an Agreement and Plan of Merger ("Merger Agreement").[6]  The merger closed on June 4, 2008.  Pursuant to the Merger Agreement, the Subsidiary (Magellan Acquisition Corp.) was merged with and into the Company (CGI), the Subsidiary ceased to exist, and the Company survived as the "Surviving Corporation."  (Merger Agreement § 1.1).  As a result of the merger, "all the property, rights, privileges, powers, and franchises, and all and every other interest of Subsidiary and the Company, shall vest in the Surviving Corporation, and all debts, liabilities and duties of Subsidiary and the Company shall become the debts, liabilities and duties of the Surviving Corporation."  (Id. § 1.3).  Thus, the merged CGI was the "successor" to CGI. There was no change to Mapfre's status as the Parent of the Surviving Corporation.[7]

McCarthy nevertheless contends that Mapfre assumed responsibility for payments and other obligations to the Executive under the Employment Agreement.  This court

---

[6]  The Merger Agreement is found at Mapfre Ex. 2.

[7]  Ms. McCarthy argues that Mapfre ratified its obligation to perform under the Employment Agreement by agreeing, in the Merger Agreement, to "honor, and cause the Surviving Corporation to honor, each Company Plan and the related funding arrangements of such Company Plan in accordance with its terms."  (See Merger Agreement § 6.9).  The term "Company Plan" is defined to include employment and severance agreements maintained for the benefit of current and former employees of CGI.  (Id. § 4.13(a)).  However, "[r]atification is a doctrine of agency law in which a principal is deemed to adopt the previously unauthorized actions of his or her agent by failing to object after finding out about them."  Schofield v. First Commodity Corp. of Boston, 793 F.2d 28, 36 (1st Cir. 1986).  CGI was not an agent of Mapfre at the time it entered into the Employment Agreement with Ms. McCarthy, and did not assume any obligations to Ms. McCarthy on Mapfre's behalf.  See id. ("Because ratification is the principal's adoption of an agent's action, the concept necessarily requires an act of the agent as agent.").  Moreover, as detailed infra, Mapfre is not an obligor under the terms of the Employment Agreement.  Therefore, there is no support for the plaintiff's argument that Mapfre ratified its obligations to her when it entered into the Merger Agreement.

disagrees.  As an initial matter, the Employment Agreement expressly provides that "the Company shall pay or cause to be paid to the Executive" all amounts due, and "provide or cause to be provided to the Executive" and any covered dependents all life and health insurance benefits due, in the event the Executive resigns for "Good Reason" (EA § 3(e)(i)-(iii)), or in the event the Executive resigns for "Good Reason" within three years following a Change of Control, (EA § 3(f)(i)-(iii)), or in the event of the Executive's death or disability.  (EA § 3(g)(i)-(ii)).  As quoted above, "Company" is defined to include any successor to CGI which, in the instant case, would be the Surviving Corporation.  There is no express obligation that the Parent assume any obligations of the subsidiary.

Additionally, the fact that only the Company or its successors would be liable for payments due under the Employment Agreement is confirmed in § 11 of the Agreement. That section  provides:

> The Executive agrees and acknowledges that the obligations owed to the Executive under this Agreement are solely the obligations of the Company, and that none of the Companies' stockholders, directors, officers, affiliates, representatives, agents or lenders will have any obligations or liabilities in respect of this Agreement and the subject matter hereof.

(EA § 11(a)) (emphasis added).  Thus, the plain language of the Employment Agreement makes a distinction between the Company on the one hand, and its stockholders, i.e., its parent, on the other.

Ms. McCarthy relies on the following provision:

> In addition to any obligations imposed by law upon any successor to the Company, the Company will require <u>any successor</u> (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business and/or assets of the Company, to expressly assume and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform it if no such succession had taken place.

(EA § 11(c) (emphasis added)).  While this provision obligates the merged CGI to expressly assume and agree to fulfill the Company's obligations under the Agreement, it does not impose any such requirements upon the parent corporation.  Accordingly, the plaintiff's reliance on § 11(c) of the Agreement is unavailing.

The fact that the Employment Agreement is made by CGI "on behalf of" the "Companies," including its parent, is not enough to make Mapfre a party to the contract or to render Mapfre an obligor thereunder.  First of all, this language does not alter the fact that the Agreement unambiguously makes the "Company" and its successors responsible for any severance payments and benefits owed to the Executive, but does not extend those obligations to the "Companies."  Furthermore, as expressly provided in § 15 of the Agreement, the parties agreed that "each of the Companies are intended to be third party beneficiaries of, and have rights and interests in respect of, the Executive's agreements set forth in <u>Sections 4</u>, <u>5</u>, and <u>6</u>."  (EA § 15(d)).  Sections 4, 5 and 6 describe the Executive's obligations regarding confidentiality, non-interference/ non-competition, and non-disparagement.  CGI's execution of the Employment Agreement "on behalf of" the Companies is entirely consistent with the Companies' status as third-party beneficiaries of the Executive's promises with regard to the matters addressed in those Sections.  There

is nothing to suggest that the parties intended to make the Companies responsible for any of CGI's obligations to the Executive.

It is a "basic principle of law that a party cannot be bound to essential and material terms of a contract to which he has not agreed." Walsh v. Telesector Res. Grp, Inc., 40 Mass. App. Ct. 227, 233, 662 N.E.2d 1043, 1047 (1996). See also Orell, 203 F. Supp. 2d at 67 (dismissing breach of contract claim where no contract existed between plaintiffs and defendants). Even though CGI executed the Employment Agreement "on behalf of itself and each of the Companies," nothing in the preamble or in the body of the Employment Agreement converts Mapfre into a party to terms of a contract to which it did not agree to be bound.

### Parties to the Incentive Award Agreements

The plaintiff does not dispute that Mapfre was not a party to the 2006 and 2007 Incentive Agreements between CGI and Ms. McCarthy. Each of those Agreements was entered into "by and between The Commerce Group, Inc., a Massachusetts corporation with its principal place of business in Webster, Massachusetts (the 'Company'), and Louise M. McCarthy (the 'Officer')." Moreover, nothing in the Agreements indicates that Mapfre or any entity other than CGI expressly or impliedly assumed any obligations to Ms. McCarthy with respect to the incentive awards granted thereunder. Consequently, the plaintiff cannot establish, for purposes of her contract-based claims, that she had a contractual relationship with Mapfre. Therefore, this court recommends that summary

judgment be entered in favor of Mapfre on Counts I, II, III and V of Ms. McCarthy's complaint.

## C. <u>Veil Piercing</u>

Although Mapfre was not an obligor under Ms. McCarthy's Agreements with CGI, the plaintiff urges the court to disregard the corporate form and hold Mapfre liable for CGI's alleged contractual obligations to her pursuant to principles of veil piercing.  This court finds that there is insufficient evidence in the record to support such a theory of liability.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."  <u>United States v. Bestfoods</u>, 524 U.S. 51, 61, 118 S. Ct. 1876, 1884, 141 L. Ed. 2d 43 (1998) (quoting Douglas, <u>Insulation from Liability Through Subsidiary Corporations</u>, 39 Yale L.J. 193 (1929) ("Douglas")).  Accordingly,

> it is hornbook law that "the exercise of 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary.  That 'control' includes the election of directors, the making of by-laws ... and the doing of all other acts incident to the legal status of stockholders.  Nor will a duplication of some or all of the directors or executive officers be fatal."

<u>Id.</u> at 61-62, 118 S. Ct. at 1884 (quoting Douglas at 196).  Notwithstanding these settled principles,

> there is an equally fundamental principle of corporate law,
> applicable to the parent-subsidiary relationship as well as generally,
> that the corporate veil may be pierced and the shareholder held liable
> for the corporation's conduct when, *inter alia*, the corporate form
> would otherwise be misused to accomplish certain wrongful
> purposes, most notably fraud, on the shareholder's behalf.

Id. at 62, 118 S. Ct. at 1885.  However, "corporate veils are pierced only in 'rare particular situations,' and only when an 'agency or similar relationship exists between the entities.'"  Scott v. NG U.S. 1, Inc., 450 Mass. 760, 767, 881 N.E.2d 1125, 1132 (2008) (quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 620, 233 N.E.2d 748, 752 (1968)).  In the instant case, the plaintiff has not submitted sufficient evidence to show that Mapfre's relationship to CGI presents such a rare situation.

To the extent Ms. McCarthy is relying on Mapfre's placement of its senior executives on CGI's Board of Directors following the merger, that is not enough to warrant veil piercing.  It is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership.'"  Bestfoods, 524 U.S. at 69, 118 S. Ct. at 1888 (quoting Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 779 (5th Cir. 1997) (alteration in original; internal quotations omitted).  "Since courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary, it cannot be enough to establish liability here that dual officers . . . made policy decisions and supervised activities at [CGI]."  Id. at 69-70, 118 S. Ct. at 1888 (internal quotations and citations omitted).

Moreover, although Ms. McCarthy has presented facts showing that Mapfre exercised control over various aspects of CGI's business following the merger (see Pl. Statement of Undisputed Facts (Docket No. 57) ("PF") ¶¶ 124-37), "control, even pervasive control, without more, is not a sufficient basis for a court to ignore corporate formalities: 'There is present in the cases which have looked through the corporate form an element of dubious manipulation and contrivance [and] finagling . . . .'" Scott, 450 Mass. at 768, 881 N.E.2d at 1132. See also Bestfoods, 524 U.S. at 62, 118 S. Ct. at 1885 (explaining that veil piercing may be appropriate "when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the [parent's] behalf"). Thus, the question whether a parent corporation controlled the activities of the subsidiary, and used it for an improper purpose, must be evaluated based on consideration of the following twelve factors:

> "(1) common ownership; (2) pervasive control; (3) confused inter-
> mingling of business assets; (4) thin capitalization; (5) nonobser-
> vance of corporate formalities; (6) absence of corporate records;
> (7) no payment of dividends; (8) insolvency at the time of the
> litigated transaction; (9) siphoning away of corporation's funds by
> dominant shareholder; (10) nonfunctioning of officers and directors;
> (11) use of the corporation for transactions of the dominant
> shareholders; and (12) *use of the corporation in promoting fraud*"
> (emphasis added).

Scott, 450 Mass. at 768, 881 N.E.2d at 1132 (quoting Att'y Gen. v. M.C.K., Inc., 432 Mass. 546, 555 n.19, 736 N.E.2d 373, 380 n.19 (2000)) (emphasis in original).

While Ms. McCarthy has submitted evidence of control, she has made no attempt to address the remaining factors. Furthermore, there are no facts in the record to suggest

that the merged CGI did not continue to function as a legitimate business or that the level of control exercised by Mapfre over CGI's operations had some "'fraudulent or injurious consequence'" or "'confused intermingling . . . with substantial disregard of the separate nature of the corporate entities.'"  Id. at 769, 881 N.E.2d at 1133 (quoting My Bread Baking Co., 353 Mass. at 619, 233 N.E.2d at 752).  Therefore, Mapfre cannot be held liable on the basis of veil piercing.[8]

### D.  Claim for Tortious Interference with Contractual Relations

In Count IV of her complaint, Ms. McCarthy claims that Mapfre unlawfully interfered with her Employment and Incentive Agreements with CGI by inducing CGI to breach its obligations to Ms. McCarthy under those Agreements.  In order to prevail on her claim, Ms. McCarthy must show "that 1) she had a contract with [CGI], 2) [Mapfre] knowingly induced [CGI] to break that contract, 3) [Mapfre's] interference, in addition to being intentional, was improper in motive or means, and 4) she was harmed by

---

[8] This court's conclusion that veil piercing is not appropriate would be equally applicable if Ms. McCarthy's claims were analyzed under ERISA.  "[T]he cases that permit veil piercing in the ERISA milieu all emphasize that a finding of some fraudulent intent is a sine qua non to the [veil piercing] remedy's availability."  United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1093 (1st Cir. 1992).  Even assuming the truth of Ms. McCarthy's contention, discussed infra, that Mapfre controlled and directed CGI's decision to deny her Good Reason claim, she has not presented evidence showing that Mapfre acquired and maintained CGI for the specific purpose of avoiding its statutory obligations to pay benefits or otherwise perpetrating a fraud.  See id. at 1094 (finding "glaring shortfall in proof" necessary to pierce corporate veil where plaintiff failed to show that subsidiary was "either a sham or inadequately capitalized;" that parent maintained subsidiary "as a subterfuge;" that parent intended to use subsidiary "as a shell in order corruptly to avoid obligations" to employees; or that parent "had any other malevolent purpose" in maintaining subsidiary).  Therefore, she cannot establish that the corporate form should be disregarded under ERISA.

[Mapfre's] actions." Orell, 203 F. Supp. 2d at 68. There is no dispute that Ms.

McCarthy had a contractual agreement with CGI. However, the record reveals that there

are disputed issues of fact with respect to the remaining elements of Ms. McCarthy's

claim.[9] Therefore, this court recommends that summary judgment be denied for both

parties on Count IV of the complaint.

### Interference

Mapfre argues that there is no evidence in the record to show that it interfered with

the contractual relationship between Ms. McCarthy and CGI because the Mapfre

executives who participated in the decision to deny Ms. McCarthy's Good Reason claim

were acting solely in their capacities as members of CGI's Board of Directors at the time

of the decision, and did not receive instructions from Mapfre on the matter. This court

agrees that Ms. McCarthy cannot rely on the dual roles of such individuals to support her

interference claim. As described above, "[s]ince courts generally presume that the

directors are wearing their subsidiary hats and not their parent hats when acting for the

subsidiary," the plaintiff cannot establish liability based solely on the decisionmakers'

positions as Mapfre executives and Directors of CGI. Bestfoods, 524 U.S. at 69-70, 118

S. Ct. at 1888 (quotations and citations omitted).

Nevertheless, Ms. McCarthy's claim is not based solely on the roles of the

individuals who decided her Good Reason claim. Rather, the plaintiff has submitted a

---

[9] More details concerning this factual dispute can be found in this court's decision on the
cross-motions for summary judgment related to the claims against CGI.

myriad of facts to support her claim that "Mapfre engaged in an intentional pattern of behavior before and after the Merger that was specifically designed to deprive Ms. McCarthy (and other CGI officers) of the benefits of their contracts . . . even though Mapfre was well aware that she was entitled to severance and incentive payments upon her resignation for Good Reason." (Pl. Opp. Mem. (Docket No. 100) at 24). While some of these facts have more support in the record than others,[10] of particular significance is the plaintiff's claim that Mapfre knowingly induced CGI to deny her Good Reason claim by directing an unfair investigation of that claim by the outside law firm of Katten Muchin Rosenman, LLP ("Katten").[11] Although the facts concerning Mapfre's role in the

---

[10] Any specific challenges to the admissibility of evidence relied on by Ms. McCarthy to support her tortious interference claim may be raised, if appropriate, by way of a motion in limine.

[11] In support of her claim that Mapfre directed an unfair investigation of her Good Reason claim, Ms. McCarthy has submitted evidence indicating that the investigation was conducted by one of Mapfre's outside law firms and overseen by Mapfre's Director of International Legal Affairs. (See Pl. Ex. 11 at 241-42, 263-64, 267; Pl. Ex. 46 at 156-58). She also has submitted evidence indicating that the outside lawyers handling the investigation failed to elicit facts that would have been favorable to Ms. McCarthy by improperly limiting the scope of the investigation, and that they made misrepresentations to CGI's Board during their report of the investigation. (See, e.g., Pl. Ex. 2 ¶¶ 38-42; Pl. Ex. 11 at 90-91; PF (Docket No. 57) ¶ 166; Def. Joint Response to Pl. Statement of Undisputed Facts (Docket No. 103) ¶ 166). Furthermore, Ms. McCarthy has presented facts which suggest that the investigation was designed to insure that the matter would be "resolved on MAPFRE's terms" so as not to set a precedent that would cause other CGI Officers to pursue good reason claims as well. (See Pl. Ex. 11 at 292-93; Pl. Ex. 78). If believed, such evidence may support an inference that Mapfre unfairly influenced the outcome of the investigation in order to deprive the plaintiff of benefits under her agreement with CGI.

Further evidence that Mapfre exercised control over Katten's investigation can be found in evidence suggesting that Katten was acting as counsel to Mapfre when it performed the investigation into Ms. McCarthy's Good Reason claim. Specifically, the record indicates that during the deposition of Mapfre's President and Chief Operating Officer, Andres Jimenez, defense counsel instructed Mr. Jimenez not to answer when asked what Mapfre's Director of International Legal

-20-

investigation are disputed by the parties, if the evidence submitted by Ms. McCarthy to support this claim is accepted as true, a finder of fact could conclude that Mapfre influenced the outcome of Ms. McCarthy's Good Reason claim by, among other things, controlling the scope of Katten's investigation and the information that Katten presented to CGI's Board of Directors, so that the only logical conclusion to be drawn by the Board was that Ms. McCarthy's claim was without merit. See Schwan's Sales Enters., Inc. v. Commerce Bank & Trust Co., 397 F. Supp. 2d 189, 198 (D. Mass. 2005) (finding that a party knowingly induces third party to break a contract when that party "'causes [the third party who is in breach] to choose one course of conduct rather than another'" (quoting Restatement (Second) of Torts § 766, cmt. h (1979); alteration in original)). Accordingly, the record reveals the existence of a genuine dispute of fact as to whether Mapfre interfered with the plaintiff's Employment Agreement.

### Improper Motive or Means

Mapfre also argues that it is entitled to summary judgment on Count IV because Ms. McCarthy has failed to identify any improper motive or means used by Mapfre in connection with its alleged interference. This court disagrees. If Ms. McCarthy's evidence about Mapfre's involvement in Katten's investigation is accepted as true, it supports an inference that since Mapfre controlled the scope of the investigation, it was

---

Affairs instructed Katten to do with respect to the investigation. (See Pl. Ex. 46 at 158-59). A factfinder may conclude from this instruction that Mapfre and Katten had an attorney-client relationship, and that Katten was acting on Mapfre's behalf when it investigated Ms. McCarthy's Good Reason claim.

responsible for Katten's limited and misleading presentation to CGI's Board of Directors regarding Ms. McCarthy's job responsibilities. Accordingly, a factfinder could conclude that Mapfre used improper means to ensure the denial of Ms. McCarthy's claim. See United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 817, 551 N.E.2d 20, 24 (1990) (improper means include the misrepresentation of facts).

Moreover, an improper motive may be found where the defendant's interference was designed to deprive Ms. McCarthy of her severance benefits. See Williams v. B&K Med. Sys., Inc., 49 Mass. App. Ct. 563, 573, 732 N.E.2d 300, 308 (2000) (improper motive where defendant's conduct "was aimed at 'forcing . . . the plaintiff to resign without paying the severance required by [her] contract'"). See also Powderly v. Metrabyte Corp., 866 F. Supp. 39, 44 (D. Mass. 1994) (finding allegations that defendant acted "with the deliberate purpose of depriving [plaintiff] of his bonus" sufficient to show that defendant acted improperly). In the instant case, a factfinder could conclude, based on the evidence submitted by the plaintiff, that Mapfre's alleged involvement in the Katten investigation was aimed at depriving Ms. McCarthy of benefits to which she was entitled under the Employment Agreement. Therefore, the question whether Mapfre used improper motive or means presents a genuine issue of fact.[12]

---

[12] Mapfre argues that to the extent it acted in order to further its own financial interests, it cannot be held liable for interfering with Ms. McCarthy's contractual relations. Under Massachusetts law, "[t]he motivation of personal gain, including financial gain, ... generally is not enough to satisfy the improper interference requirement." King v. Driscoll, 418 Mass. 576, 587, 638 N.E.2d 488, 495 (1994). However, it is not clear that Mapfre's financial interests were involved since CGI was liable to Ms. McCarthy under her Agreements. It should be up to the finder of fact to

## Harm to the Plaintiff

Mapfre contends, with respect to the fourth element of Ms. McCarthy's tortious interference claim, that the plaintiff did not suffer any harm because "there is no evidence that anyone at CGI would have reached a different conclusion on Ms. McCarthy's [Good Reason] claim than the one reached by the CGI Board," and "no rational finder of fact could agree with Ms. McCarthy's claims."  (Mapfre Opp. Mem. (Docket No. 94) at 12-13).  Again, this court disagrees.  As an initial matter, McCarthy has raised challenges to the sufficiency of the investigation into her Good Reason claim, making it impossible to predict what the decision would have been if all the facts had been presented.  Moreover, there is evidence in the record, in particular, but without limitation, Mr. Ermilio's deposition testimony, from which an unbiased factfinder could conclude that Ms. McCarthy had "Good Reason" to resign from CGI following the merger with Mapfre because the merger resulted in the loss of significant job responsibilities she had held.  Therefore, the question whether Ms. McCarthy suffered harm as a result of Mapfre's alleged interference with her contractual relations should be resolved at trial.

## Defense of Privilege

Finally, Mapfre argues that even if it is assumed that it interfered with Ms. McCarthy's contractual agreements with CGI, it nevertheless is entitled to summary

---

determine whether Mapfre acted in order to advance its own legitimate financial interest or out of ill will to deprive Ms. McCarthy of benefits under her Employment Agreement.  See Restatement (Second) of Torts § 767, cmt. d (1979) ("A motive to injure another or to vent one's ill will on him serves no socially useful purpose").

judgment because it was privileged to interfere in CGI's affairs.  The privilege relied on

by Mapfre provides that "a parent corporation . . . 'is privileged to interfere with the

contractual business of its subsidiary provided that [the parent,] as the privileged

defendant[,] acts with the purpose of protecting its own legitimate economic interests, and

without actual malice directed toward the plaintiff.'"  <u>Powderly</u>, 866 F. Supp. at 43

(quoting <u>Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp.</u>, 788 F. Supp. 54, 59

(D. Mass. 1991)) (internal quotations and punctuation omitted).  Accordingly, where, as

here, "a plaintiff alleges intentional interference 'against a privileged defendant the

plaintiff must show that the defendant acted with actual malice, in the sense of malevo-

lence, spite or ill will.'"  <u>Id.</u> (quoting <u>Charles River Data Sys., Inc.</u>, 788 F. Supp. at 60).

Ms. McCarthy contends that Mapfre's conduct demonstrated actual malice and ill

will "because it directed CGI to deny Ms. McCarthy benefits it knew she was entitled to

receive, employed a sham process to 'investigate' the merits of her claim, relied on false

information, and then punished her for asserting her claim by, among other things,

refusing to advance attorneys' fees as the Employment Agreement explicitly requires."

(Pl. Opp. Mem. (Docket No. 100) at 27).  If proven, this claim is sufficient to establish

that Mapfre's actions were malicious.  <u>See</u> <u>Powderly</u>, 866 F. Supp. at 44 (finding that, if

believed, allegations that defendant acted "with the deliberate purpose of depriving

[plaintiff] of his bonus" were sufficient to establish malicious interference with plaintiff's

contractual relationship); <u>Williams</u>, 49 Mass. App. Ct. at 576, 732 N.E.2d at 310

(affirming trial court's conclusion that grandparent company exceeded the boundaries of

permissible interference when it engaged in actions aimed at forcing plaintiff to resign from employment without severance payments required under his employment agreement). In addition, Ms. McCarthy has put forth evidence of personal animosity directed at her by Mapfre. Therefore, this court concludes that the issue of privilege should be resolved at trial as well.

## IV. CONCLUSION

For all the reasons detailed herein, this court concludes that Mapfre is entitled to summary judgment with respect to Counts I-III and V of Ms. McCarthy's complaint, but that disputed issues of fact preclude summary judgment for either party with respect to Count IV. Therefore, this court recommends to the District Judge to whom this case is assigned that Mapfre's Motion for Summary Judgment (Docket No. 59) be ALLOWED IN PART and DENIED IN PART, and that Ms. McCarthy's Motion for Summary Judgment (Docket No. 55) be DENIED with respect to all of the claims against Mapfre.[13]

---

[13] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

_____ / s / Judith Gail Dein_____
Judith Gail Dein
U.S. Magistrate Judge