**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LOUISE M. McCARTHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civ. A. No. 09-10161-PBS |
| | ) |
| THE COMMERCE GROUP, INC. and | ) **ORAL ARGUMENT REQUESTED** |
| MAPFRE, S.A., | ) |
| | ) |
| Defendants | ) |
| | ) |

**DEFENDANT THE COMMERCE GROUP, INC.'S MEMORANDUM IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

I.  PLAINTIFF'S AGREEMENTS GOVERN HER ENTITLEMENT TO
    ATTORNEYS' FEES ................................................................................... 3

    A.  The Employment Agreement and Undertaking Control the Question of
        Whether Plaintiff is Entitled to Any Attorneys' Fees From CGI in this
        Litigation ................................................................................................. 3

    B.  The Attorneys' Fees Provision of the Employment Agreement and
        Undertaking are Enforceable .................................................................. 5

II. IF THE COURT FINDS THE PARTIES' AGREEMENTS UNENFORCEABLE,
    ANY FEE AWARD UNDER THE ERISA STATUTE SHOULD EXCLUDE
    FEES SOUGHT ON STRATEGIES AND CLAIMS UNRELATED TO ERISA,
    THAT FAILED, OR THAT HAVE NOT YET BEEN RESOLVED .............................. 6

    A.  Ms. McCarthy Failed on a Number of Strategies and Claims that Are
        Readily Severable From the Rest of the Case ......................................... 7

    B.  Ms. McCarthy Should Not Receive Fees for Unsuccessful Motions and
        Unnecessary Tactics That Did Not Contribute to Her Trial Success .................... 8

    C.  Fees and Expenses Related to CGI's Affirmative Defenses and Both
        Parties' Experts Should Be Excluded .................................................... 10

III. ANY LODESTAR CALCULATION SHOULD BE ADJUSTED TO REFLECT
     PLAINTIFF'S ACTUAL BILLING ARRANGEMENT WITH HER COUNSEL,
     PLAINTIFF'S LITIGATION STRATEGY, AND THE LIMITED NATURE OF
     PLAINTIFF'S "SUCCESS." ........................................................................ 12

    A.  An Adjustment Must be Applied to Reflect Plaintiff's Actual Billing
        Arrangement with Her Counsel .............................................................. 12

        1.  Plaintiff is Prematurely Seeking Fees She Has Not Incurred, and
            that are Well Beyond any Market Value................................................. 13

        2.  CGI is Entitled to the Same Fee Discount Plaintiff Received from
            Her Counsel for Legal Services that Would be Recoverable if this
            were an Ordinary Fee Petition .......................................................... 15

    B.  In Typical Fee Applications, Court Appropriately Reduce the Fee to
        Account for Plaintiff's Efforts to Excessively Drive Up the Costs of
        Discovery ................................................................................................. 15

        1.  Plaintiff Chose to Pursue Excessive Depositions and Broad
            Document Requests ............................................................................ 15

        2.  Plaintiff Told Co-Workers at CGI that her Good Reason Claim was
            Leverage to Force a Payment from CGI and MAFPRE ......................... 16

# TABLE OF CONTENTS
### (continued)

**Page**

C.  A Further Adjustment Must be Made to Any Fee Award to Bring the Award in Line with Fee Awards in Similar Cases that Obtained Similar Results ............................................................................................................. 17

IV.  CGI DID NOT ENGAGE IN ANY EXTRAORDINARY OR INAPPROPRIATE LITIGATION TACTICS ............................................................................. 18

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Accusoft Corp. v. Palo,*
  237 F.3d 31 (1st Cir. 2001) ........................................................................................... 6

*Agredano v. Mutual of Omaha Co.*
  75 F.3d 541 (9th Cir. 1995) .......................................................................................... 10

*Alfonso v. Aufiero,*
  66 F. Supp. 2d 183 (D. Mass. 1999) ......................................................................... 8, 10

*Christoff v. Ohio Northern University Employee Benefit Plan,*
  No. 3:09CV540, 2010 WL 3958735 (N.D. Ohio Oct. 8, 2010) .................................... 18

*Colby v. Assurant Employee Benefits,*
  635 F. Supp. 2d 88 (D. Mass 2009) ............................................................................. 18

*Coutin v. Young & Rubicom,*
  124 F.3d 331 (1st Cir. 1997) ...................................................................................... 7, 9

*Crescent Publishing Grp. v. Playboy Enterprises, Inc.,*
  246 F.3d 142 (2nd Cir. 2001) ................................................................................. 12, 13

*Dickens v. Aetna Life Ins. Co.,*
  Civil Action No. 2:10-cv-00088, 2011 WL 1258854 (S.D.W. Va. Mar. 28, 2011) ....... 18

*Flynn v. Dick Corp.,*
  624 F. Supp. 2d 125 (D.D.C. 2009) ............................................................................. 15

*Hardt v. Reliance Standard Life Ins.,*
  336 Fed. Appx. 332 (4th Cir. 2009) ............................................................................. 18

*Hensley v. Eckerhardt,*
  461 U.S. 424 (1983) ....................................................................................... 12, 14, 17

*Island View Residential Treatment Center v. Blue Cross Blue Shield Of Massachusetts,*
  548 F.3d 24 (1st Cir. 2008) ........................................................................................ 4, 6

*Kramer v. Smith Barney,*
  80 F.3d 1080 (5th Cir. 1996) ..................................................................................... 4, 6

*Liston v. Unum Corp. Officer Severance Plan,*
  330 F.3d 19 (1st Cir. 2003) ......................................................................................... 19

*Professional Servs. Group* v. *Town of Rockland*,
No. 04-11131-PBS, 2008 WL 1924996 (D. Mass. April 30, 2008) ..........................................7

*Radford Trust v. First Unum Life Ins. Co. of America*,
399 F. Supp. 2d 3 (D. Mass 2005) ........................................................................................11

*United States v. One Star Class Sloop Sailboat Built in 1930 with Hull Number 721,*
*Names "Flash II,"*
546 F.3d 26 (1st Cir. 2008) ...........................................................................................12, 14

*Video-Cinema Films Inc. v Cable News Network, Inc.*,
2004 WL 213032 (S.D.N.Y. Feb. 3, 2004)...........................................................................14

*Werb v. Reliastar Life Ins. Co.*,
Civil No. 08-5126, 2012 WL 175026, *10 (D. Minn. Jan. 20, 2012)...................................7, 8

## STATUTES

28 U.S.C. § 1920......................................................................................................................11

29 U.S.C. § 1132(g)(1) ............................................................................................................5

## OTHER AUTHORITIES

Local Rule 26.1(C)....................................................................................................................16

## PRELIMINARY STATEMENT

The truthful story of this litigation and the reasons for its expense are not fairly or accurately depicted in Plaintiff's application.  Plaintiff's strategy from the outset of this case was premised upon an expectation that it would settle prior to trial, and she would never be responsible for paying the legal fees advanced on her behalf by CGI.  As set forth in sworn affidavits filed with CGI's Summary Judgment Motion, Plaintiff told her colleagues before she filed her claim that she planned to do so to gain leverage to negotiate a new employment arrangement with MAPFRE and that, if she were not successful, MAPFRE would pay half her claim to make it go away.  After this lawsuit was filed, Ms. McCarthy pursued wide-ranging discovery, serving 94 separate requests for documents on CGI and MAPFRE with her Complaint.  She then aggressively pursued her right to reimbursement of legal fees from CGI under her Employment Agreement, even claiming that CGI's negotiating position over the scope of her Undertaking was a violation of Massachusetts G.L. Chapter 93A.  After CGI and MAPFRE moved to dismiss her common law claims on ERISA preemption grounds, Ms. McCarthy opposed the application of ERISA (despite pleading an ERISA claim), and pressed her requests for unfettered discovery.

This case has been costly for both sides because (1) Plaintiff consistently resisted the application of ERISA throughout and (2) discovery proceeded as though this were a common law breach of contract and tortious interference case to be heard de novo, and not as an ERISA case where discovery was limited to the procedural issues that were ultimately tried.  At the initial conference in this case, Ms. McCarthy told the Court that she would need 3 depositions, and that she "might" need an expert.  In fact, her application for fees shows that she had identified her expert 8 months before and, within 2 months of that conference had already

identified 8 witnesses whose depositions she intended to take, a list that would continue to grow. The intervening event between that conference on May 1, 2009 and Plaintiff's drastic expansion of discovery was the parties' agreement relating to CGI's contractual obligation to reimburse Ms. McCarthy's legal fees.  Once Ms. McCarthy had that in hand, she embarked on a no-holds barred plan of discovery.  That was her choice, not CGI's doing.

Moreover, as CGI has argued elsewhere, the Court should reserve the question of attorneys' fees until the end of the entire case.[1]  The question of Ms. McCarthy's entitlement to attorneys' fees should be governed by her agreements with CGI, not the ERISA fee statute. Indeed, Plaintiff's counsel acknowledged that "The Undertaking required by Section 16 [of Ms. McCarthy's Employment Agreement] represents the bargained-for result in the event Ms. McCarthy's claims are not successful."  Affidavit of Michael T. Marcucci Exh. N (hereinafter, "Marcucci Aff").  Plaintiff accepted the benefits of those agreements and was thus relieved of the burden of paying her attorneys' fees on an ongoing basis.  Now, by her fee application, Plaintiff effectively asks this Court to abrogate her agreement.  Plaintiff is simultaneously seeking fees associated with negotiating the Undertaking and the preparation of quarterly reimbursement requests pursuant to the Undertaking that she now seeks to set aside!  This is simply untenable.

If the Court determines to consider this issue now and reconfirms its ruling to award fees to Ms. McCarthy, it should sharply reduce the present fee request.  The Court should exclude from the fee request:  (1) fees and expenses related to unsuccessful motions practice premised on the inapplicability of ERISA; (2) fees and expenses related to CGI's yet-to-be litigated affirmative defenses, which were expressly excluded from the October trial; (3) fees and

---

[1] *See* Memorandum in Support of Defendant The Commerce Group, Inc.'s Motion to Alter or Amend Judgment (Dkt No. 265).

expenses related to expert witnesses; (4) fees and expenses related to the negotiation of the

Undertaking and fee reimbursement; (5) fees and expenses related to the unsuccessful mediation;

and (6) fees and expenses related to other unnecessary work.

In addition, should the Court determine to make an award now, the Court should also

reduce the remaining fee request by: (1) applying a downward adjustment to account for the

actual fee arrangement between Plaintiff and her counsel as well as Plaintiff's counsel's wasteful

litigation strategy; (2) applying a reasonable reduction to the total fees to reflect the minimal and

interim nature of Ms. McCarthy's success and conforming any fee award to awards granted in

similar ERISA remand-only cases; and (3) recognizing that much of the discovery reflected in

the fee application related to the relative merits, not the process, of Ms. McCarthy's claims.  CGI

has reimbursed 54.3% of the amount of Ms. McCarthy's fee application to date — 100% of the

amounts she has requested – and is not seeking to recoup those funds at present.  CGI has not

acknowledged that those fees were reasonable in light of the trial result, nor has it been able to,

until now, examine exactly how Plaintiff's counsel spent her time.  There is no ground to award

Plaintiff any fees at this time, but if fees are awarded, they should be much less than requested.

## I.      PLAINTIFF'S AGREEMENTS GOVERN HER ENTITLEMENT TO ATTORNEYS' FEES.

### A.      The Employment Agreement and Undertaking Control the Question of Whether Plaintiff is Entitled to Any Attorneys' Fees From CGI in this Litigation.

Ms. McCarthy's Employment Agreement, and the Undertaking agreed to thereunder,

govern the payment of attorneys' fees in all circumstances.  Under section 16 of the 2007

Employment Agreement, CGI is required to advance – and has been advancing – Ms.

McCarthy's attorneys' fees related to the "dispute or question of interpretation" under Ms.

McCarthy's Employment Agreement.  (Attached as Exh. 1). At the outset of this litigation, Ms.

McCarthy insisted upon CGI's compliance with this provision of the Employment Agreement, and confirmed that her right to legal fees would be governed by the terms of the Employment Agreement.  *See* Marcucci Aff. ¶ 14, Exh. N.

As required by the Employment Agreement, the parties entered into the Undertaking, which is a predicate to, and defined the terms of, Plaintiff's right to reimbursement of her legal fees.[2]  In exchange for CGI's commitment to advance her legal fees, Plaintiff agreed:

> "[T]o repay CGI within 25 days of any judgment or settlement (formal or informal) concerning the dispute in which CGI prevails:  The full amount paid by CGI to me or to my counsel on my behalf for legal fees incurred in connection with the dispute or question of interpretation regarding the Employment Agreement."

(Attached as Exh. 2)  The requirement that Plaintiff repay any fees provided to her by CGI if CGI prevails on Ms. McCarthy's Good Reason claim is a central component of the Undertaking. That term acts as a check on Plaintiff's otherwise unfettered use of CGI's money to litigate her claim against CGI.

ERISA benefits are a creature of contract and Courts respect agreements that modify or contradict provisions of ERISA analogous to the attorneys' fees statute.  For example, the First Circuit has upheld a provision in an ERISA plan that provided for a shorter statute of limitations for bringing benefit claims.  *See Island View Residential Treatment Center v. Blue Cross Blue Shield Of Massachusetts*, 548 F.3d 24, 27 (1st Cir. 2008) (enforcing contractual limitations on statute of limitation for ERISA claim, noting "there is nothing facially unreasonable, much less unconscionable, about this contractual limitation"); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996) (despite the fact the ERISA statute vests exclusive jurisdiction to hear an ERISA dispute to the federal courts, upheld arbitration provision in ERISA plan).  The same logic

---

[2] When Plaintiff signed this Undertaking, her Complaint included a claim for recovery of ERISA benefits.

applies to the attorneys' fees statute, which provides that "the court *in its discretion* may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1) (emphasis added).  If an agreement can override ERISA law on statute of limitations and mandatory federal jurisdiction, surely an agreement would control the discretionary act of awarding fees.

The Employment Agreement provides for mandatory attorneys' fees in the event Ms. McCarthy prevails, assuming she sought advancement on an ongoing basis.  Ms. McCarthy has received the clear benefit of advancement, which is not contemplated by ERISA.  The repayment feature is obviously not an incidental term of the agreements.  Since signing the Undertaking, Plaintiff has received all the fees she has requested related to her claims against CGI.  To date she has been paid $869,993.55 in fees and costs under this contractual arrangement.  On the other hand, the Undertaking protects CGI by requiring repayment if the claim was not successful. Plaintiff's counsel acknowledged as much, writing that "The Undertaking required by Section 16 represents the bargained-for result in the event Ms. McCarthy's claims are not successful." Marcucci Aff. ¶ 14, Exh. N ( (February 3, 2009 Letter from Anne Josephson to John Hanify) (emphasis added).  In utter disregard of the bargain and her representations that she would abide by it, Plaintiff now seeks the recovery under the statute for this amount, paid under the contract, plus more.  In this way, she wishes to preserve for herself the benefit of the agreement but deprive CGI of its bargained for repayment obligation.

**B.      The Attorneys' Fees Provision of the Employment Agreement and Undertaking are Enforceable.**

Plaintiff asks this Court to effectively abrogate the parties' agreements by allowing Plaintiff to retain advanced legal fees from CGI, even if CGI ultimately prevails on Plaintiff's Good Reason claim.  Such a result, clearly foreseeable, would effectively void the contract. Although Plaintiff has raised innumerable legal theories at various points, she has yet to attack

directly her own contract and Undertaking respecting legal fees signed at the outset of this case.

There is no support for any contention that the agreements are unenforceable.

First, the Undertaking was openly and freely negotiated between Plaintiff and CGI, and

Plaintiff – an attorney herself – was represented by counsel during those negotiations.  Second,

no reason exists in fact or law to find the attorneys' fee provisions in section 16 of the

Employment Agreement or the Undertaking void or contrary to the law.  No such claim has been

made by Plaintiff; indeed, she insisted upon it.  Courts have upheld similar contractual

modifications to ERISA rights.  *See Kramer*, 80 F.3d at 1084 (agreement overriding statutory

federal jurisdiction over ERISA claim); *Island View Residential Treatment Center*, 548 F.3d at

27 (enforcing contractual limitation on statute of limitations for ERISA claim).

Moreover, there is no doubt the Court would uphold a settlement agreement that

accounted for the parties' right to attorneys' fees.  The Undertaking is no different.  It merely is

an ex-ante agreement between the parties to account for each party's rights and obligations with

respect to attorneys' fees.  Like a valid settlement agreement, it should be enforced as written.

*See Accusoft Corp. v. Palo,* 237 F.3d 31, 41 (1st Cir. 2001) ("[W]e do not consider it our place to

rewrite contracts freely entered into between sophisticated business entities.") (internal citations

and quotations omitted).

## II.    IF THE COURT FINDS THE PARTIES' AGREEMENTS UNENFORCEABLE, ANY FEE AWARD UNDER THE ERISA STATUTE SHOULD EXCLUDE FEES SOUGHT ON STRATEGIES AND CLAIMS UNRELATED TO ERISA THAT FAILED, OR THAT REMAIN UNRESOLVED

The reality is that the parties' contractual arrangement for attorneys' fees has rendered

the typical fee petition analysis virtually impossible.  Because of the Undertaking, Plaintiff's

counsel was freed from any market-based limitations on  her work, and incurred fees in an

amount that is unprecedented in this type of case.  As the comparison below reveals, Plaintiff's

$1,603,103.87 petition bears no resemblance to any ERISA remand-only fee petition, and is <u>41 times</u> the fee award in the *Hardt* case.  Instead, Plaintiff and her counsel have taken advantage of Plaintiff's contractual right to attorneys' fees by unreasonably running up fees as leverage to pressure a payout from Defendants.  Accordingly, if the Court decides that the parties' contractual agreements are unenforceable, a substantial reduction in the fee petition is necessary.

A.     **Ms. McCarthy Failed on a Number of Strategies and Claims that Are Readily Severable From the Rest of the Case.**

If there were no contractual arrangement between the parties respecting the payment and re-payment of fees, Plaintiff's application would nevertheless be premature and grossly excessive.  The First Circuit has held that "[i]f a plaintiff prevails on an insubstantial subset of her interrelated claims and obtains only limited relief, the trial court has discretion to shrink fees to reflect that inferior result." *Coutin v. Young & Rubicom,* 124 F.3d 331, 339 (1st Cir. 1997); *see also Werb v. Reliastar Life Ins. Co.*, Civil No. 08-5126, 2012 WL 175026, *10 (D. Minn. Jan. 20, 2012) (eliminating fees for contract-related argument in ERISA award).  As this Court has previously noted, "[t]he challenge in awarding attorneys' fees in this case is that [Plaintiff's] counsel charged full bore ahead on multiple claims, and lost all but one of them." *Professional Servs. Group v. Town of Rockland*, No. 04-11131-PBS, 2008 WL 1924996 (D. Mass. April 30, 2008).  Plaintiff's Complaint included 5 counts.  She lost on four of them, and on the fifth, the result obtained is one that she declared before trial was inappropriate.  *See* Plaintiff's Response to Objections Filed by the Commerce Group, Inc. to the Report and Recommendation on Cross-Motions for Summary Judgment as to CGI, at 23-25 (Docket No. 148) (Remand not an appropriate remedy).  Rather, it was CGI that argued that remand was the appropriate alternative to affirming the Board's decision.  *See* Objections to Report and Recommendation on Cross-

Motions of Plaintiff and CGI for Summary Judgment, at 21 (Docket No. 141) (remand, not a trial, was appropriate remedy if process was flawed).

In addition, the issues that were tried and led to remand are distinct from the legal theories that underlay Plaintiff's unsuccessful claims. *See Alfonso* v. *Aufiero*, 66 F. Supp. 2d 183, 194-95 (D. Mass. 1999); *Werb*, 2012 WL 175026 at *10. The dismissed claims all sought severance benefits on the ground that Ms. McCarthy was entitled to them on the merits and that CGI/MAPFRE's failure to pay them was a breach of contract or on the grounds that MAPFRE had tortiously interfered with her claim for benefits. *See* Complaint (Dkt. No. 1). The trial related solely to the process by which Plaintiff's Good Reason claim was reviewed, applying ERISA procedures. The procedural issues that were tried are severable from and, indeed, diametrically opposed to, Ms. McCarthy's common law claims, all of which depended upon a rejection of ERISA's application.

### B.      Ms. McCarthy Should Not Receive Fees for Unsuccessful Motions and Unnecessary Tactics That Did Not Contribute to Her Trial Success.

Ms. McCarthy seeks more than $300,000 in fees related to work that either failed or had nothing to do with the issues tried. Plaintiff has already excluded from her fee application other unsuccessful efforts. *See* Josephson Aff. at 10. By the same logic, the Court should eliminate consideration of fees related to certain motions that had nothing to do with an ERISA remand.

First, after pleading a federal claim on the face of her Complaint, which automatically gave this Court subject matter jurisdiction, Plaintiff's motion to remand to Suffolk Superior Court was frivolous and warranted fees <u>in Defendants' favor</u>. Federal jurisdiction was proper on the face of the Complaint and the Court made quick work of her motion. *See* Transcript of May 1, 2009 Motion Hearing at 8:11-9:7; July 30, 2009 Order (Dkt No. 37) at 1-2. Ms. McCarthy also opposed CGI's and MAPFRE's Motions to Dismiss arguing that ERISA did not apply. Ms.

McCarthy retained an additional law firm to assist with the ERISA issues.  *See* Josephson Aff,

Exh. N (Parker, Brown & Maccauley, P.C. charges).  The total fees related to these failed efforts

was $74,443.50.[3]

Second, Plaintiff's Motion for Summary Judgment was similarly found to be without

merit.  Ms. McCarthy spent $170,422 on this Motion for Summary Judgment and Objections to

the Magistrate Judge's report, which were denied.  That motion was so weak that Magistrate

Judge Dein summarily denied it.  Since that was predicated on common law claims, it held no

hope of success even if ERISA did not apply, given the existence of substantial factual disputes.

Similarly, Ms. McCarthy incurred $90,192.50 in fees opposing CGI's Motion for Summary

Judgment and $9,855 on the Summary Judgment argument.  Since CGI's Motion was largely

granted, at a minimum, Ms. McCarthy should not be able to recover at least half of these fees,

$50,023.75.

It is also not appropriate to order CGI to pay $27,018.22 in fees and expenses fees related

to the unsuccessful mediation.  *See Coutin,* 124 F.3d at 339.  Similarly, Ms. McCarthy seeks fees

for a Motion to Compel depositions of CGI Directors that was never served or filed, and for

discovery (including a deposition) of Erika Chin, a compensation consultant retained by CGI.

Ms. Chin did not testify at trial, and the discovery had no impact on the trial.  Similarly, Ms.

McCarthy has no basis to seek reimbursement of fees related to negotiating the Undertaking that

she now seeks to abrogate, or for her counsel preparing bills to send to CGI for reimbursement.

---

[3] Plaintiff now claims that the potential application of ERISA was not anticipated by Ms. McCarthy and is an example of CGI's improper actions in defending the case.  Josephson Aff. at 5.  But this latter point is demonstrably false.  Shortly after her Good Reason claim was denied by the Committee Plaintiff's counsel asked about an ERISA-related appeal of the Good Reason finding.  Trial Exh. 35 (July 17, 2008 Letter from A. Josephson to E. Rayner).  Moreover, prior to filing suit, Plaintiff's counsel researched the application of ERISA and alleged an ERISA count in her December 2008 Complaint.

The Court should also reduce the rate applicable to non-core matters.  *See Alfonso,* 66 F. Supp. 2d at 195-196.  CGI thus asks the Court to exclude from any fee award the following:

- Fees related to the preparation of Ms. McCarthy's Summary Judgment Motion and Objections to the Magistrate Judge's Report & Recommendations ($170,422);

- Fees related to Ms. McCarthy's Opposition to CGI's Summary Judgment Motion and Summary Judgment Argument reduced by ½ to reflect lack of success ($50,023.75);

- Fees related to Ms. McCarthy's Motion to Remand & Opposition to Motion to Dismiss ($74,443.50);

- Fees and expenses related to the unsuccessful mediation ($27,768.22);

- Fees related to unfiled and unnecessary Motion to Compel MAPFRE officers' depositions ($13,488.75);

- Fees related to negotiating the Undertaking and fee reimbursement, and filing quarterly requests ($11,737.50);

- Fees related to discovery of Erika Chin ($9,143.43); and

- Fees related to non-core work ($3,500.42) (rate reduced by 1/3).

   **Subtotal: $360,527.57**

   **C.      Fees and Expenses Related to CGI's Affirmative Defenses and Both Parties' Experts Should Be Excluded.**

   Ms. McCarthy also seeks $18,443 in fees related to opposing CGI's affirmative defenses, and another $116,344.15 in fees and $99,633 in expenses relating to work with the parties' expert witnesses, two of whom relate to the affirmative defenses.  Ms. McCarthy claims that those defenses have been proven to be baseless and chides CGI for not raising them at the October trial.  Such contentions are without merit.

   There are multiple reasons why legal fees and expenses related to unresolved affirmative defenses and for expert fees are inappropriate.  First, expert fees are generally not recoverable in ERISA actions and Ms. McCarthy should not be awarded them under the ERISA fee statute.  *See Agredano v. Mutual of Omaha Co*. 75 F.3d 541, 544 (9th Cir. 1995) (professional fees for expert

witnesses cannot be shifted under ERISA §502(g)(1)); *Radford Trust v. First Unum Life Ins. Co. of America*, 399 F. Supp. 2d 3, 19 (D. Mass 2005) ("[T]he First Circuit and its district courts have generally declined to award expenses beyond those in [28 U.S.C. § 1920]," which does not include professional expert fees).  Ms. McCarthy seeks fees and expenses relating to her "merits" expert Joel Henning, and her affirmative defenses expert, Geoffrey Hazard, as well as fees for deposing CGI's affirmative defenses expert, Nancy Moore.  None of these witnesses testified at trial, nor did they contribute to Plaintiff's limited success.[4]  The Court should thus exclude $208,638.21 for fees and expenses relating to expert-related work.

Second, contrary to the false assertion in Plaintiff's Application, CGI has not abandoned its affirmative defenses.  They will be pressed and considered upon remand.  Indeed, as stated in open court, it was Defendants' position that the affirmative defenses were not part of this trial, and the Court agreed that they were saved for another day.  *See* Transcript of September 20, 2011 Motion Hearing at 17:1-18:13 (excerpt attached here to as Exh. 3).  Thus, the Court should exclude $18,443.75 in fees related to the affirmative defenses.

The Court should thus exclude the following:

- Legal fees related to CGI's affirmative defenses: $18,443.75;

- Legal fees related to expert discovery and other expert-related work: $116,456.65; and

- Expert expenses: $92,181.56.

**Subtotal: $227,081.61**

---

[4] The expert issue demonstrates why this question should be deferred.  Ms. McCarthy will no doubt submit her expert's opinion to the Compensation Committee when her claim is considered on remand but is seeking to have his fees, which had nothing to do with the trial, paid now.

III.     **ANY LODESTAR CALCULATION SHOULD BE ADJUSTED TO REFLECT PLAINTIFF'S ACTUAL BILLING ARRANGEMENT WITH HER COUNSEL, PLAINTIFF'S LITIGATION STRATEGY, AND THE LIMITED NATURE OF PLAINTIFF'S "SUCCESS"**

After excluding the work related to the unsuccessful motions and unresolved claims, $1,015,494.69 remains on Ms. McCarthy's fee petition.  This amount is nevertheless unreasonable in light of Plaintiff's actual billing relationship with her counsel, the nature of Plaintiff's litigation strategy driven by her reliance on CGI's reimbursement pursuant to the Undertaking, and the questionable "success" Plaintiff obtained by an Order of remand she did not seek.  In addition, much of the remaining expense relates to discovery on the merits of Ms. McCarthy's Good Reason claim, which is yet to be decided.

A.     **An Adjustment Must be Applied to Reflect Plaintiff's Actual Billing Arrangement with Her Counsel.**

Plaintiff is seeking fees that she has never and, apparently, never will be, charged by her counsel.  The Supreme Court has cautioned that attorneys' fees awards should reflect the market for the legal services, noting that "hours that are not properly billed to one's *clients* also are not properly billed to one's *adversary*…."  *Hensley v. Eckerhardt*, 461 U.S. 424, 434 (1983) (emphasis in original, internal citations omitted).  Thus, under a fee-shifting provision, "a district court's primary concern is with the market value of counsel's service."  *United States v. One Star Class Sloop Sailboat Built in 1930 with Hull Number 721, Names "Flash II,"* 546 F.3d 26, 40 (1st Cir. 2008).  When the party seeking fees has retained and paid for a private counsel, as Ms. McCarthy has done in this case, "[t]he actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded."  *Crescent Publishing Grp. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 151 (2nd Cir. 2001); *see also Flash II*, 546 F.3d at 40 ("the rate that private counsel actually charges for her services…is a reliable indicium of market value").  The focus on the actual fee arrangement, and the prevailing market

rates for the offered services, avoids plaintiff's counsel receiving a windfall in fees by recouping more than she would typically receive in that type of case. *See Crescent Publishing*, 246 F.3d at 151.

Here, while the details of Ms. McCarthy's fee agreement with her counsel remain murky and should reasonably be subject to further inquiry, Plaintiff has paid for her counsel's services through a combination of hourly rate billings and a monthly flat fee. To date, Plaintiff's counsel has charged Ms. McCarthy $869,993.55 in legal fees and costs. Ms. McCarthy has sought and received reimbursement for this amount from CGI. It is not clear whether she will ever be charged amounts over and above the amounts already paid by CGI. At the outset of this litigation, Plaintiff's counsel billed Plaintiff on an hourly rate, and aggressively litigated this case as a contract/tort action through discovery. After a mediation failed and in likely recognition of the mounting fees in what was actually an ERISA appeal, Plaintiff's counsel switched to a monthly flat fee rate. Plaintiff has not returned to the original hourly billing arrangement she had with her counsel.

> **1.      Plaintiff is Prematurely Seeking Fees She Has Not Incurred, and that are Well Beyond any Market Value.**

This petition does not seek a fee award equal to the $869,993.55 that Plaintiff has actually been charged by her counsel pursuant to their agreement. Rather, after obtaining a remand she never sought, Plaintiff seeks an additional $733,110.32 for a total of $1,603,103.87 in fees and costs. The $869,993.55 has been advanced to Plaintiff in accordance with the bargain between the parties. Even assuming plaintiff sought remand (or at the very least did not actively oppose CGI's position that remand was an appropriate remedy for any procedural wrongs) and conceded ERISA's application, the remand component of this aggregate amount would be a small slice of $869,993.55. This application now seeks nearly double the amount that counsel

has actually charged Ms. McCarthy.  This additional amount does not represent the market value of all services performed because it has never been charged to the Plaintiff, and thus certainly does not represent the amount actually paid by Plaintiff or that will be paid.  *See Flash II*, 546 F.3d at 40 (the focus for a district court on a fee petition is the market value for the services provided).

Under guidance from the Supreme Court in *Hensley*, Plaintiff's counsel's excess fees of $733,110.32 cannot constitute "reasonable fees."  The application for fees is facially unreasonable, given that Ms. McCarthy received a substantial discount from the total amount reflected in her counsel's bills and fee application.  *See Video-Cinema Films Inc. v Cable News Network, Inc.*, Nos. 98 Civ.7128, 98 Civ.7129, 98 Civ.7130, 2004 WL 213032 *4-5 (S.D.N.Y. Feb. 3, 2004) (refusing to award attorneys' fees for amounts above the agreed fee-cap, reasoning that "awarding more than [the party] paid pursuant to the fee agreement would amount to a windfall for [the party] and a penalty against [the opposing party.]")  While the $869,993.55 may represent a value of <u>all</u> the legal work performed by Plaintiff's attorneys, even in the absence of the parties' fee agreement, such an amount cannot reasonably or rationally represent an amount that could be attributed to remand.  As identified in Section II, *supra*, if this were a typical fee application, Plaintiff would not be entitled to recover for all of the unsuccessful and yet-to-be resolved strategies outlined above.[5]

---

[5] Plaintiff's assertion that CGI's payment of Ms. McCarthy's requests for reimbursement amounts to an admission that those fees were reasonable is without merit.  CGI was reimbursing fees under a contract that required Ms. McCarthy to repay those fees in the event CGI prevailed at the end of trial court proceedings.  CGI's assessment of the "reasonableness" of her fees was in light of that repayment obligation; a very different analysis applies to whether those fees are reasonable if they would never be recouped.

> **2.** **CGI is Entitled to the Same Fee Discount Plaintiff Received from Her Counsel for Legal Services that Would be Recoverable if this were an Ordinary Fee Petition.**

Plaintiff submitted her petition as if she had been charged the full $1,603,103.87 figure, but she only paid $869,993.55 for legal services. The reality is that Plaintiff received an effective across-the-board discount of $733,110.32, which is equivalent to approximately a 45.7% discount on the $1.6 million figure. CGI is obviously entitled to the same discount and must pay no more than the actual rate paid by Plaintiff. Plaintiff's counsel has conceded that this "discount" was not for "public spiritedness," and thus Plaintiff is entitled to no more than she was charged by counsel. *See* Josephson Aff. ¶ 24; *see also Flynn v. Dick Corp.,* 624 F. Supp. 2d 125, 130 (D.D.C. 2009) (court may award fee above those actually charged, "if the fees actually paid by the client were discounted for public spirited reasons"). Thus, the discount Plaintiff received should be applied to the $1,015,494.69  figure. Applying that 45.7% discount to the remaining fees on Plaintiff's petition, the absolute maximum amount for potentially reasonable fees and expenses is $551,413.61.

> **B.** **In Typical Fee Applications, Courts Appropriately Reduce the Fee to Account for Plaintiff's Efforts to Drive Up the Costs of Discovery.**

If the Court chooses to consider this fee application now, the usual standard would also require a consideration of Plaintiff's wasteful efforts. Plaintiff inaccurately attempts in her application to justify allocating all of the contractually advanced fees to strategies employed by defendants. The opposite is true.

> **1.** **Plaintiff Chose to Pursue Excessive Depositions and Broad Document Requests.**

As noted above, Plaintiff's opposition to the application of ERISA dramatically increased the scope of discovery. Once discovery began, Plaintiff's counsel immediately ignored her own representations to the Court that she needed three depositions and launched a broad campaign of

discovery.  Marcucci Aff. ¶¶ 4-7 & Exhs. B, C & E.  Ms. McCarthy served four separate sets of Document Requests on CGI and two on MAPFRE (four more than permitted by the Local Rules) totaling 94 individual requests.  She also served 3 sets of interrogatories and a set of Requests for Admission.  *See* Marcucci Aff. ¶ 5 & Exh. C (Plaintiffs' Discovery Requests); Local Rule 26.1(C).  Defendants expended significant resources responding to these broad and irrelevant requests.

For example, Ms. McCarthy sought <u>every</u> communication between the CGI legal department and MAPFRE, S.A. <u>up to one year after Ms. McCarthy's departure</u>.  Obviously, these documents were irrelevant to Plaintiff's Good Reason claim, and almost all were privileged, as they related to joint representation of clients, and had nothing to do with the case recently tried.  Nevertheless, Plaintiff refused to reasonably tailor her request, and Defendants were required, at considerable expense, to collect these documents, review them, and create a privilege log reflecting all of these communications.  This is but one example of Plaintiff's excessive discovery tactics.  Numerous other example of Plaintiff's tangential, overbroad requests abound.

Moreover, rather than the 3 depositions she represented to this Court, Ms. McCarthy ultimately sought 10 (excluding CGI's expert): four CGI Directors who work in Spain (Messrs. Jimenez, Tejera, Fernandez-Cid and Sugranyes; two MAPFRE lawyers who work in Spain (Claudio Ramos and Jose Manuel Gonzalez Porro), a compensation consultant who did work for CGI (Erika Chin), plus Mr. Ermilio, Mr. Tract and Mr. Fels.

> **2.      Plaintiff Told Co-Workers at CGI that her Good Reason Claim was Leverage to Force a Payment from CGI and MAPFRE.**

Evidence of Plaintiff's wasteful litigation strategy is not limited to the conduct of Plaintiff's counsel during discovery; it also is confirmed by Plaintiff's own words.  Prior to her

resignation, Ms. McCarthy told one of her colleagues that her Good Reason claim was "delivered to negotiate a deal with MAPFRE."  Olohan Aff. ¶ 18 (Ex. 4).  She suggested to another colleague that she believed even if her Good Reason claim was not successful before the Board that "she expected that MAPFRE and CGI would pay half the value of her claim to <u>make the case go away</u>."  Sher Aff. ¶ 11 (emphasis added) (Ex. 5).

The result of Plaintiff's strategy is seen in the outlandish invoices that she submitted with this petition.  For example, at the end of 2009, in the middle of discovery and months before Summary Judgment, Plaintiff had already incurred approximately $430,000 in legal fees.  That is an astounding figure.  To make matters worse, as Plaintiff ran up her own bills – for CGI to pay – Plaintiff's litigation strategy also required CGI to expend significant resources on its own counsel defending itself in this suit, including fees incurred collecting and reviewing irrelevant documents that Plaintiff requested, and preparing for unnecessary depositions.

### C.     A Further Adjustment Must be Made to Any Fee Award to Bring the Award in Line with Fee Awards in Similar Cases.

If this were a typical fee petition, another factor courts evaluate to determine if requested fees are "reasonable" is whether the fee request is consistent with the awards obtained in similar cases.  *See Hensley*, 461 U.S. at 430 (listing "awards in similar cases" as a factor in the reasonableness of fees).  Here, Plaintiff seeks fees under the ERISA statute attorneys' fee provision, and thus this fee should be compared with those obtained in similar ERISA cases that achieved the same result.

However, a review of fee awards in ERISA remand cases makes abundantly clear that Plaintiff's $1.6 million fee petition, as well as the $551,413.61 figure, are shockingly out of line with fee awards in comparable cases.  The fee petition borders on unconscionable.  For example, in the *Hardt* case, the Supreme Court decision cited by Plaintiff to justify an award of fees here,

the district court awarded $39,149.00 in attorney fees and costs for the identical result obtained

by Ms. McCarthy. *See Hardt v. Reliance Standard Life Ins.*, 336 Fed. Appx. 332, 2009 WL

2038759, *2 (4th Cir. 2009) (identifying district court fee award of $39,149.00). Subsequent

cases have awarded fees in these ERISA remand-only cases in the range of $12,746.25 to

$62,936.12, with an average award of $34,149.15. *See* Exh. 6 (list of decisions)[6]. Plaintiff's

request of $1,603,103.87 in attorneys' fees and costs is more than 41 times larger than the fees

awarded in *Hardt* for the identical result.

Plaintiff's petition is out of line with awards in this District too. Before *Hardt*, one court

in this District awarded attorneys fees for obtaining a remand of an ERISA benefits

determination. *See Colby v. Assurant Employee Benefits*, 635 F. Supp. 2d 88, 96 (D. Mass

2009). In *Colby*, consistent with the post-*Hardt* decisions, the court awarded the plaintiff

$39,477.36 in fees and costs.

If Plaintiff had agreed at the outset of this litigation with CGI's correct position that her

Employment Agreement and incentive agreements were governed by ERISA, this case could

have been litigated in line with the fee awards observed in other ERISA cases. While the

stipulated administrative record in this case, Trial Exh. 98, was larger than the typical ERISA

case, it was not so large to justify a fee award that is 41 times larger than the award in *Hardt*.

## IV.    CGI DID NOT ENGAGE IN ANY EXTRAORDINARY OR INAPPROPRIATE LITIGATION TACTICS

Rather than accepting responsibility for blind pursuit of her common law claims and

wasteful litigation strategy, Plaintiff lays the blame at Defendants' feet with baseless and false

---

[6] This list of post *Hardt* cases does not include those courts that have, relying on *Hardt*, found that a mere ERISA remand does not constitute "some degree of success on the merits," and thus awarded zero fees for obtaining an ERISA remand. *See e.g., Dickens v. Aetna Life Ins. Co.*, Civil Action No. 2:10-cv-00088, 2011 WL 1258854, *5-6 (S.D.W. Va. Mar. 28, 2011); *Christoff v. Ohio Northern University Employee Benefit Plan*, No. 3:09CV540, 2010 WL 3958735, *2 (N.D. Ohio Oct. 8, 2010).

accusations that Defendants engaged in some sort of "Stalingrad" defense.  Despite this oft-
repeated refrain by Plaintiff's counsel, nothing could be further from the truth, and Plaintiff's
motion is free from contemporaneous evidence of any improper behavior.  Defendants have
consistently sought to limit the expense of litigation here, trying – without success – to convince
Plaintiff to pursue a streamlined ERISA-based litigation.  Marcucci Aff. ¶ 3.  In contrast to the
misleading portrait drawn by Plaintiff, which is supported by nothing more than the say-so of
counsel, CGI engaged in nothing more extraordinary than defending the case. [7]

Plaintiff complains about Defendant's affirmative discovery, but the truth is something
different.  CGI took <u>one</u> fact deposition, not surprisingly, of Ms. McCarthy.  CGI issued two sets
of document requests, and one set of interrogatories to Ms. McCarthy, which focused almost
exclusively on her factual contentions about her job and seeking documents supporting her
claims.  *See* Marcucci Aff. Exh. R Defendants' discovery was limited and focused.

Plaintiff also complains about Defendants' insistence on a protective order that not only
made discovery easier and less expensive, but was necessary given Ms. McCarthy's role as
former counsel to CGI.  Much of the relevant material in this litigation is privilegel.  Plaintiff's
fee petition reveals she spent at most a few thousand dollars on the protective order.[8]

Plaintiff's misleading assertion that Defendants delayed discovery ignores the actual
progress of the litigation.  As the Court knows, in an ordinary ERISA case,  evidence is limited
to the record before the Board.  *See, e.g., Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d
19, 24 (1st Cir. 2003) ("The ordinary rule is that review for arbitrariness is on the record made
before the entity being reviewed.").  Defendants, who correctly believed that ERISA governed

---

[7] CGI does not reply to each of Ms. McCarthy's scattershot assertions, as they were made with no effort to quantify any additional cost to Plaintiff resulting from CGI's supposed intransigence.

[8] Plaintiff's fees related to the protective order are not included on Exhibit E.

here, simply sought to apply the limited-discovery ERISA rules.  *See* Marcucci Aff. Exh D.

Moreover, far from running up costs, at the start of discovery, Defendants proposed a

streamlined discovery process in recognition of the fact that Plaintiff's own files and emails

comprised the majority of the relevant documents.  Such a proposal would have greatly limited

the discovery costs of both parties, and was reasonable given Ms. McCarthy's obvious

familiarity with her own files.  Plaintiff rejected this proposal out of hand.  Marcucci Aff. ¶  3.

Plaintiff also rejected Defendants' offer to frame issues for trial, before summary judgment

motions were filed, that might have reduced costs as well.  *See* Marcucci Aff. ¶ 12.

Finally, Plaintiff improperly complains that CGI misbehaved by producing Mr. Ermilio's

and Ms. McCarthy's e-mail accounts.  This is absurd.  First, Ms. McCarthy's email account was

part of the administrative record to which Plaintiff stipulated.  Trial Exh. 98.  Second, Plaintiff

insisted on production of every document reviewed by Katten, which included both of these

email accounts.  Third, CGI reimbursed Ms. McCarthy for the software her counsel purchased to

review the documents.  Had CGI not produced them, Plaintiff would have moved to compel.

## **CONCLUSION**

The Court should defer to the parties' clearly written agreements and address the

propriety of an attorneys' fee award at the conclusion of this case, if it ever becomes necessary.

If the Court finds that the parties' agreements are unenforceable, and treats this like a typical fee

petition, Ms. McCarthy's request for $1.6 million is unreasonable both in light of the result

achieved and her conduct in the litigation.  If any fees are awarded, the Court should apply a

sharp reduction to Plaintiff's fee request to account for her limited success, unusual fee

arrangement and excessive litigation tactics.

Respectfully submitted,

THE COMMERCE GROUP, INC.,[9]

By their attorneys,

/s/ Michael T. Marcucci

John D. Hanify  (BBO# 219880)

Karen A. Whitley  (BBO# 564742)

Michael T. Marcucci  (BBO# 652186)

JONES DAY

100 High Street
Boston, MA  02110-1781

Telephone:  (617) 960-3939

Facsimile:   (617) 449-6999

mmarcucci@jonesday.com

Counsel for Defendants

Dated: February 1, 2012

---

[9] On January 1, 2010, The Commerce Group, Inc. changed its name to MAPFRE USA Corp.  To avoid confusion with co-Defendant, MAPFRE, S.A., the parties have continued to refer to it as The Commerce Group.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a redacted copy of the foregoing document was filed on February 1, 2012, through the Court's CM/ECF system, which will serve a copy upon counsel of record identified in the Notice of Electronic filing.

_/s/ Michael T. Marcucci_____
Michael T. Marcucci

Dated:  February 1, 2012