UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOUISE M. McCARTHY,<br><br>Plaintiff,<br><br>vs.<br><br>THE COMMERCE GROUP, INC. and MAPFRE, S.A.,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>) Civ. A. No. 09-10161-PBS<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT THE COMMERCE GROUP, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REVOKE THE APPOINTMENT OF THE NEUTRAL INVESTIGATOR**

**PRELIMINARY STATEMENT**

Plaintiff's Motion seeks to undo the Court's Order and its approval of Mr. Gilmore as neutral investigator and replace him with a de facto arbitrator. Plaintiff's only basis for this extraordinary relief is a claim that CGI failed to disclose Mr. Gilmore's "conflict of interest." In reality, there is neither a failure to disclose nor a conflict of interest.

CGI chose Mr. Gilmore after Ms. McCarthy had ten days to perform due diligence on the three candidates proposed. CGI nominated Mr. Gilmore—with Plaintiff's consent-- after Plaintiff strongly objected to one of the candidates, Alan Rose, and raised a personal preference that CGI not choose the other team proposed, Thomas Maffei and Ann Pauly. Plaintiff's counsel was told that defense counsel had prior professional contacts with all of the candidates and did not ask for any additional information. Defendant's counsel had no intention of—and made no effort to—conceal these professional contacts. The prior representations that so concern Ms.

McCarthy could have been uncovered in a moment with a phone call or simple and obvious Google or Westlaw search.

Plaintiff's belated objection to Mr. Gilmore and her proposal to have this Court appoint as an "investigator" a retired Judge currently serving as an arbitrator or mediator is a backdoor attempt to get the Court to do what it cannot by the front—appoint an arbitrator to decide Ms. McCarthy's Good Reason claim. There is no basis in fact or law to conclude that Mr. Hanify's and Mr. Gilmore's past representations will prevent Mr. Gilmore from upholding his professional duties. He has not been appointed as an arbitrator or neutral decisionmaker and there is no reason for this Court to create additional criteria for the neutral investigator beyond those stated in the Order. Mr. Gilmore, like Mr. Rose and Mr. Maffei, clearly meets that test. Plaintiff has raised no serious objection to Mr. Maffei and Ms. Pauly; in the event the Court determines that Mr. Gilmore is disqualified, CGI should be permitted to nominate another candidate, including Mr. Maffei and Ms. Pauly. The Motion should be denied for the following reasons.

### A. Ms. McCarthy Participated in the Selection of Mr. Gilmore

In selecting Mr. Gilmore, CGI fully complied with the December 16 Memorandum & Order (Docket No. 251) (hereinafter "Order") and, indeed, went beyond its requirements to include Ms. McCarthy in the process. The Order stated that CGI was to nominate one investigator and Ms. McCarthy would have 10 days to object, *see* Order at 72, and that the investigator have no prior connection to MAPFRE, CGI or Ms. McCarthy, Order at 69. Instead of nominating one candidate, CGI provided Ms. McCarthy with 3 nominees who met the Court's standard more than ten days before the nomination was due. *See* Affidavit of John D. Hanify Exh. 2 (hereinafter cited as Hanify Aff. __). While CGI was looking for candidates and then

while Plaintiff was reviewing the candidates, CGI's counsel engaged in a dialogue with Plaintiff's counsel about the investigative process and counsel's discussions with these prospective candidates. *See* Hanify Aff. ¶ 5 & Exhs. 1 & 3. CGI also provided Ms. McCarthy with a draft of an engagement letter for the investigator and gave her an opportunity to comment on it. *See* Hanify Aff. Exh 5. Plaintiff never asked CGI's counsel about any prior ties to any of the candidates.

In response to the three nominees, Ms. McCarthy advanced objections to two of the candidates—Alan Rose of Rose, Chinitz & Rose and Ann Pauly and Thomas Maffei of Griesinger, Tighe & Maffei. *See* Hanify Aff. ¶ 6 & Exh. 4. Plaintiff's objections were based on the professional and personal relationships between Mr. Rose and Mr. Maffei and Plaintiff's counsel. *See id*. She said that she participated in an informal group of employment litigators with Mr. Rose and was friendly with Mr. Maffei because both had clerked for Judge Hennessy. *Id.* CGI asked for clarification of these objections because CGI did not view the relationships as described as disqualifying and there was no suggestion that the candidates would be biased against Ms. McCarthy. *See* Hanify Aff. ¶ 7 & Exh 5.

Plaintiff's counsel responded that she objected to Mr. Rose because of his long-ago tenure as a partner at Nutter, McClennen & Fish and her hope to retain cordial relations with members of his firm. Counsel also stated that she did not want to put her friend Mr. Maffei in an awkward position in what Ms. Josephson called this "high stakes" position. *See* Hanify Aff. Exh. 6.

Counsel also called Mr. Hanify separately to detail, in particular, her objections to Mr. Rose, which were based on Plaintiff's counsel's experience with him at Nutter, McClennen & Fish, which was "not neutral." *See* Hanify Aff. ¶ 9. Once again, the only objection to Mr.

Maffei was that Mr. Maffei is Ms. Josephson's friend, both clerked for the same Judge, and she did not want to put him "in the middle" of this litigation. There was thus no challenge to Mr. Maffei's or Ms. Pauly's neutrality, objectivity or professionalism.

In that call with Plaintiff's counsel, Mr. Hanify told her that he (and others on the defense team) had various professional contacts with all three of the candidates over the years, did not think they were disqualifying and was not going to accede to Plaintiff's objections on the ground that such connections disqualified the candidates. *See* Hanify Aff. ¶ 9. At no time did Plaintiff's counsel ask for any detail on these prior connections between CGI's counsel and the three candidates.

Notwithstanding CGI's view that these prior professional contacts by counsel were irrelevant, Plaintiff's counsel reiterated her objections to Mr. Rose and to Ms. Pauly and Mr. Maffei. *See* Hanify Aff. ¶ 9. As a result, after having ample time to raise any objections, and learning that Mr. Gilmore had prior professional contacts with some of CGI's counsel, Plaintiff emphatically suggested that CGI select Mr. Gilmore. *See* Hanify Aff. Exh. 6.

Moreover, Plaintiff's effort to conjure up a conspiracy of silence about Mr. Gilmore's past connection to Mr. Hanify defies credibility, given the ease with which Ms. McCarthy could have discovered the connection. First, of course, during her dialogue with defense counsel about the investigator, Plaintiff could have asked CGI's counsel to describe in detail their professional contacts with the three candidates; Plaintiff also could have asked Mr. Gilmore to catalogue any connection. Second, if Plaintiff had done a simple Westlaw search for Mr. Gilmore, his work on the behalf of Hanify and King could have easily been discovered; it is the top result if "John A.D. Gilmore" is put through Westlaw and third if "john /3 gilmore" is searched. In addition, a

simple Google search of "Gilmore and Hanify" would have revealed Mr. Gilmore's representation of Hanify and King.  *See* Hanify Aff. ¶ 12 & Exhs.7,8, 9 & 10.

   **B.** **Mr. Gilmore's and Mr. Hanify's Past Representations Do Not Cast Doubt on Mr. Gilmore's Ability to Serve as Neutral Investigator**

As an initial matter, Mr. Gilmore has been appointed as a neutral investigator, not as an arbitrator or mediator and there is no reason to hold him to an arbitrator's standard.  Second, while Plaintiff characterizes Mr. Gilmore's prior representation as a "conflict of interest" she does not cite to any law under which it would be considered a conflict of interest.  Indeed, under the Massachusetts Rules of Professional Responsibility, Mr. Gilmore's prior representation would not be a conflict, and would not disqualify him from representing Ms. McCarthy, much less serving in a neutral, investigative role.  *See* Mass. R. Prof. Resp. 1.7, 1.8 & 1.9.  Mr. Gilmore's representation of Hanify & King was not "directly adverse" to Ms. McCarthy here, and Ms. McCarthy is not his client.

In the *Cambridge Trust* case, Richard Renehan and Mr. Gilmore, both then of Hill & Barlow, were retained to represent Hanify & King, not Mr. Hanify personally.  *See* Hanify Aff. ¶ 11.  The representation stretched from around 1997 through the SJC decision in 1999.  There was no trial, the case was decided on summary judgment and addressed the propriety of including attorneys' fees in the calculation of a damages award for purposes of a contingency fee agreement.  *See Cambridge Trust*, 430 Mass. 472, 472-73 (1999).

Mr. Hanify represented Hill & Barlow, of which Mr. Gilmore was then a member, in an arbitration with another departing member.  Mr. Gilmore was not a witness in that case.  Hill & Barlow dissolved in early 2003.  Hanify Aff. ¶ 11.  Both before and since these engagements, Mr. Gilmore and Mr. Hanify have been adverse to each other on behalf of various clients.  *See* Hanify Aff. at ¶ 13.

Courts have routinely rejected similar challenges to counsel's independence in shareholder derivative litigation, where special litigation committees typically retain "independent counsel" to investigate claims. The usual test for "independent counsel" is similar to the one established by this Court – counsel must not have previously represented the company. *See*, *e.g.*, *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1188-91 (N.D. Cal. 1993) ("the corporation must, before proceeding further with the derivative action, retain independent counsel having no prior relationship with the corporation or the individual defendants."). Like here, where the Court will review a decision of the Compensation Committee under a deferential standard, if a corporation sets up an independent special committee with independent counsel to review a derivative claim, the court will apply the deferential business judgment review to the Committee's decision to reject a derivative claim. *See e.g., Zapata Corp.* v. *Maldonado*, 430 A.2d 779, 788-89 (Del. 1981).

In *Lemenestrel* v. *Warden*, 964 A.2d 902, 915, n.7 (Pa Super. Ct. 2009) the court rejected a claim that "independent counsel" was not independent because he had previously provided legal representation to the law firm that represented the company. The Court found that connection did not "establish a conflict that would taint [the attorney's] objectivity in his investigation." *Id.* Here the connection is even more tenuous. Plaintiff's allegation focuses on a 13-year old representation of one of CGI's counsel's former law firm. Other courts have similarly rejected independence challenges with greater connections. *See Desaigoudar* v. *Meyercord*, 108 Cal. App. 4th 173, 195, 133 Cal. Rptr. 2d 408, 424 (Cal. Ct. App. 2003) (Court rejected Plaintiff's claim that independent counsel was biased because other attorney at law firm represented company employee in unrelated matter.); *Kaplan* v. *Wyatt*, 499 A.2d 1184, 1190 (Del. 1985) (Court rejected claim that independent counsel was biased because Plaintiff's

counsel had previously, and successfully, sued independent counsel's law firm and one of the firm's senior partners.); *Schmidt* v. *Magentic Head Corp.*, 97 A.D. 2d 151, 160-162 (NY App. 2nd Div. 1983) (Court rejected challenge to independence of law firm hired to offer independent opinion on corporate officer indemnification on the ground that firm had previously been retained by a partner in the corporation's law firm);   As the Court in *Schmidt* stated, "[w]hile we are aware that one lawyer retained by another may well feel a sense of responsibility to his retainer, we are content to rely upon counsel's fiduciary obligation to the corporation and the strictures set forth in the Code of Professional Responsibility." *See Schmidt*, 97 A.D. 2d at 160-62.  The same is true of Mr. Gilmore, who is obviously qualified, as Plaintiff acknowledged.

### C. Plaintiff's Proposed Remedy is Inappropriate

Finally tipping her hand, Plaintiff suggests selecting one of four retired Judges currently serve as arbitrators to replace Mr. Gilmore.  She also proposes an arbitrator's duty of disclosure, something well beyond the Order.  Thus, what Plaintiff really wants is an arbitrator to decide her Good Reason claim, which would abrogate the terms of her agreement with CGI, contradict the Order, and violate ERISA law.  *See Conkright* v. *Frommert,* 130 S.Ct. 1640, 1646-47 (2010) (administrator's decision still entitled to deference on remand following finding of procedural error).

Plaintiff's suggestion that the Court should impose its own choice, from Ms. McCarthy's list, because CGI was "unable or unwilling" to nominate a truly neutral investigator is disingenuous.  CGI nominated three candidates who met the Court's criteria.  Even if Mr. Rose were disqualified by Ms. Josephson's long-ago run-in with him at Nutter and Mr. Gilmore by his and Mr. Hanify's long-ago representations of each others' firms, there were no substantive objections to Mr. Maffei and Ms. Pauly.  The only stated objection is that Plaintiff's counsel had

hoped to "continue to maintain the professional/personal relationship [Mr. Maffei] and I have had without putting him in the awkward high stakes position that this assignment would require. It was my hope that you would respect that." Hanify Aff. Exh. 6 (January 30, 2012 E-mail from Anne Josephson to Michael Marcucci). CGI did respect that, but now that Plaintiff has raised tenuous objections to Mr. Gilmore, if the Court believes Mr. Gilmore should not serve as neutral investigator, Mr. Maffei and Ms. Pauly are worthy of reconsideration given Plaintiff did not have a real basis to object to their candidacy.

Plaintiff and her counsel cannot impose their own choices on CGI, in contravention of the Court's Order, simply by raising points of personal privilege on Mr. Maffei and by waiting to do her due diligence on Mr. Gilmore until after he was appointed by the Court. Had Plaintiff done what the Court contemplated, and raised any objections to Mr. Gilmore before he was appointed, CGI would have had the opportunity to identify other candidates. With no disrespect to the able former jurists suggested by Ms. McCarthy, they do not even meet the very qualifications that Plaintiff's counsel herself had previously described: "I would want to weigh heavily in the person's training and experience in conducting investigations. It is a particular skill set." *See* Exh. 1 (January 12, 2012 E-mail from Anne Josephson to Michael Marcucci). There is no evidence those candidates have any such experience, much less matching that of Mr. Gilmore. Accordingly, if this Court revokes the appointment of Mr. Gilmore, CGI is entitled to propose an alternative candidate, including Ms. Pauly and Mr. Maffei.

## CONCLUSION

For the foregoing reasons, CGI respectfully requests that this Court deny Plaintiff's Motion to Revoke the Appointment of the Neutral Investigator Due to Undisclosed Conflicts of Interest, and to Appoint One of Four Former Judges, Subject to Clearance of Conflict Checks.

Respectfully submitted,

THE COMMERCE GROUP, INC.,[1]

By its attorneys,

/s/ Michael T. Marcucci

John D. Hanify  (BBO# 219880)
Karen A. Whitley  (BBO# 564742)
Michael T. Marcucci  (BBO# 652186)
JONES DAY
100 High Street
Boston, MA  02110-1781
Telephone:  (617) 960-3939
Facsimile:  (617) 449-6999

mmarcucci@jonesday.com

Counsel for Defendants

Dated: February 28, 2012

---

[1] On January 1, 2010, The Commerce Group, Inc. changed its name to MAPFRE U.S.A. Corp.  To avoid confusion with co-Defendant, MAPFRE, S.A., the parties have continued to refer to it as The Commerce Group.

## CERTIFICATE OF SERVICE

     I certify that a copy of the foregoing MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REVOKE THE APPOINTMENT OF THE NEUTRAL INVESTIGATOR was filed on February 28, 2012, through the Court's CM/ECF system, which will serve a copy upon counsel of record identified in the Notice of Electronic filing.

                                                /s/ Michael T. Marcucci

                                                Michael T. Marcucci

Dated:  February 28, 2012